**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| **Edwin Thibodeau, as Personal Representative of the Estate of Alan R. Thibodeau,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.: 6:23-cv-06605-SAL-KFM** |
| **v.** | ) ) ) | |
| **Bamberg County, South Carolina; Southern Health Partners, Inc.; Geri Gillespie, LPN, in her individual capacity; Karen Hughes, LPN, in her individual capacity; Officer Billy Ray Coggins, in his individual capacity; Lt. Ashley Woods, in her individual capacity; Cpl. Patrice Hatton, in her individual capacity; and Cpt. Latarcha Wilson, in her individual capacity;** | ) ) ) ) ) ) ) ) ) ) ) ) | **FIRST AMENDED COMPLAINT** |
| **Defendants.** | ) ) ) ) | |

The Plaintiff would respectfully show unto this Honorable Court and alleges as follows:

## PARTIES

1.      The Plaintiff, Edwin Thibodeau, is a citizen and resident of the County of Stafford, State of Virginia.  Plaintiff is the brother and duly-appointed Personal Representative of the Estate of Alan R. Thibodeau.

2.      This suit is filed on behalf of the heir of Alan R. Thibodeau (hereinafter referred to as "Mr. Thibodeau").  At the time of his death, Mr. Thibodeau was a fifty-one-year-old resident of Prince William County, Virginia.  Mr. Thibodeau is survived by his son who is his sole heir.

3.      Defendant Bamberg County, South Carolina (hereinafter "Bamberg County") is a political subdivision of the State of South Carolina existing under the laws of the State of South Carolina

1

(as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended).  At all times hereinafter mentioned in this Complaint, this Defendant operated and controlled the Bamberg County Detention Center and acted and carried on its business by and through its agents, servants, and/or employees who were operating within the scope of their officially assigned and/or compensated duties.

4.     Defendant Southern Health Partners, Inc. is a for-profit corporation with employees and agents stationed throughout South Carolina, providing healthcare services within county correctional facilities, including but not limited to the Bamberg County Detention Center.  At all times hereinafter mentioned in this lawsuit, Defendant Southern Health Partners, Inc. acted and carried on its business by and through its agents, servants, and/or employees and had a doctor-patient relationship with the decedent, Alan Thibodeau. Additionally, Defendant Southern Health Partners, Inc. is liable for the acts and omissions of its agents, contractors, and employees under the theories of agency, respondeat superior, and non-delegable duty.

5.     Defendant Geri Gillespie, LPN, a resident of South Carolina, is a nurse employed with Southern Health Partners, Inc., a for-profit corporation with employees and agents stationed throughout South Carolina, including Bamberg County, South Carolina, providing healthcare services within county detention centers.  At all times mentioned herein, Defendant Gillespie was acting in the course and scope of her employment, and under color of state law.  Defendant Gillespie is being sued in her individual capacity.

6.     Defendant Karen Hughes, LPN, a resident of South Carolina, is a nurse formerly employed with Southern Health Partners, Inc., a for-profit corporation with employees and agents stationed throughout South Carolina, including Bamberg County, South Carolina, providing healthcare services within county detention centers.  At all times mentioned herein, Defendant Hughes was

acting in the course and scope of her employment, and under color of state law.  Defendant Hughes is being sued in her individual capacity.

7.       Upon information and belief, Officer Billy Ray Coggins is a resident of South Carolina and was an agent, servant and/or employee of Bamberg County working as a correctional officer at the Bamberg County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant Coggins is being sued solely in his individual capacity under the color of state law.

8.       Upon information and belief, Lt. Ashley Woods is a resident of South Carolina and was an agent, servant and/or employee of Bamberg County working as a correctional officer at the Bamberg County Detention Center during the time period set forth in this Complaint.  For purposes of this action, Defendant Woods is being sued solely in her individual capacity under the color of state law.

9.       Upon information and belief, Cpl. Patrice Hatton is a resident of South Carolina and was an agent, servant and/or employee of Bamberg County working as a correctional officer at the Bamberg County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant Hatton is being sued solely in her individual capacity under the color of state law.

10.       Upon information and belief, Cpt. Latarcha Wilson is a resident of South Carolina and was an agent, servant and/or of Bamberg County working as the director of the Bamberg County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant Wilson is being sued solely in her individual capacity under the color of state law.

11.       Plaintiff has complied with the pre-lawsuit procedural requirements provided for by the South Carolina Medical Malpractice Act, including those provided for in sections 15-79-120, 15-

70-100, and 15-36-100 of the <u>South Carolina Code of Laws</u>.  With regard to the claims for medical malpractice against Defendant Southern Health Partners, Inc., the Plaintiff filed a Notice of Intent to File Suit in a Medical Malpractice Case against Southern Health Partners, Inc. on November 6, 2023.  A pre-suit mediation pursuant to the Notice of Intent to File Suit took place on January 5, 2024, which resulted in an impasse.

12.     Additionally, as required by the Act, the Plaintiff has attached the affidavit of medical expert Edward C. O'Bryan, MD, as Exhibit 1.

13.     The Plaintiff is informed and believes that venue is proper in this Division because the alleged acts and omissions giving rise to this cause of action occurred in Bamberg County, South Carolina.

**FACTS**

14.     Alan R. Thibodeau was a 51-year-old single father of one adult son.

15.     Mr. Thibodeau resided with his elderly parents in Prince William County, Virginia, and served as their primary caregivers.   He was a loving father, son, and brother.

16.     At the age of 20, Mr. Thibodeau was diagnosed with schizophrenia, bipolar type.  He was later diagnosed with diabetes and required insulin and metformin to control his blood sugar.

17.     The severity of Mr. Thibodeau's mental health condition rendered him disabled and unable to work outside of the home, though he was able to successfully control his mood and demeanor with a proper regimen of mood stabilizers and antipsychotic medications.  This regimen included a combination of Depakote, Haldol, and Thorazine.

18.     After the death of his father in 2021, Mr. Thibodeau began weening himself off the psychiatric medicines which had successfully controlled his mental health condition for many years up to that point.

19.    On January 30, 2022, Mr. Thibodeau self-reported to the Bon Secours – Southside Medical Center in Petersburg, Virginia.  Mr. Thibodeau admitted that he had been non-compliant with his antipsychotic medications and was experiencing delusions as a result.  Mr. Thibodeau was admitted to the behavioral health unit of Bon Secours – Southside Medical Center on the date he self-reported.

20.    Mr. Thibodeau was discharged from the Bon Secours – Southside Medical Center on February 10, 2022, and thereafter went missing.  After receiving an agitated phone call from Mr. Thibodeau, Plaintiff filed a missing persons report with law enforcement in Virginia on February 12, 2022.  Family members also determined that Mr. Thibodeau had left town with only a few articles of clothing and without his cellular phone and other important personal items.

21.    On February 14, 2022, Mr. Thibodeau was found sleeping in the spare bedroom of a home in Bamberg, South Carolina.  Law enforcement was summoned, and Mr. Thibodeau reported that he had entered the home "to have a place to stay and to keep warm."  Mr. Thibodeau was thereafter arrested by the Bamberg County Sheriff's Office and transferred to the Bamberg County Detention Center.

22.    Individuals who have a been charged with a crime but are presumed innocent, like Mr. Thibodeau, possess a federal due process right to reasonable medical care and to be free of cruel, inhumane, and unusual punishment pursuant to the 14th Amendment of the United States Constitution.

23.    Pursuant to the Minimum Standards for Local Detention Facilities in South Carolina, every detention center in South Carolina must have a written agreement with a licensed physician or medical authority to ensure that its detainees receive access to reasonable and adequate medical care.  During the time period of Mr. Thibodeau's detainment, Defendant Bamberg County had

contracted with Defendant Southern Health Partners, Inc. to provide medical care to the detainees located within its facility.

24.    Shortly after his arrest, Mr. Thibodeau appeared before the Honorable Richard Threatt, South Carolina Magistrate Judge, via teleconferencing for a bond hearing.  Also present at the hearing were a victim's advocate appearing on behalf of the homeowner, Plaintiff Edwin Thibodeau, and a social work supervisor from Bon Secours – Southside Medical Center from which Mr. Thibodeau had recently been released.  The Court heard from an appointed victim's advocate, who stated that she and the homeowner in whose home Mr. Thibodeau was found were "concerned about the mental health" of Mr. Thibodeau and his ability to be safely released on bond into the community.

25.    During the bond hearing, Mr. Thibodeau appeared calm in demeanor but delusional in his speech.  During the hearing, Mr. Thibodeau was assured that he would be properly fed and be "taken care of" by the "nice people at the jail."

26.    After hearing from both the appointed victim's advocate and from Mr. Thibodeau, the Court determined that it would defer bond until a mental health evaluation could be performed by the South Carolina Department of Mental Health.  The Court stated that Mr. Thibodeau "will be safe where he is until we can make some sort of determination as to what is to go on."

27.    The family of Mr. Thibodeau made efforts to ensure the correctional and medical understood that Mr. Thibodeau needed access to his medications.  For example, after the bond hearing, on February 18, 202, the Plaintiff corresponded with Defendant Lt. Ashley Woods and informed her that Mr. Thibodeau "cannot go extended periods without his meds…. its dangerous and potentially life threatening if doesn't get them."

28.    Mr. Thibodeau was subsequently evaluated by the South Carolina Department of Mental Health which determined that Mr. Thibodeau lacked capacity to stand trial pursuant to State v. Blair, 275 S.E. 529, 273 S.E. 2d 536 (1981) and S.C. Code Ann. § 44-23-410 (1976).  Prior to the evaluation, the Plaintiff provided the Department of Mental Health with discharge instructions from Mr. Thibodeau's most recent hospitalization which specifically identified his medical history and prescribed medication regimen.

29.    On April 19, 2022, the South Carolina Circuit Court for Bamberg County determined that Mr. Thibodeau was "unable to stand trial" because of the South Carolina Department of Mental Health's conclusion that Mr. Thibodeau "likely has untreated symptoms of mental illness." It was further determined that Mr. Thibodeau was "subject to involuntary commitment proceedings." The Circuit Court then ordered that the prosecutor responsible for the prosecution of Mr. Thibodeau's criminal charge initiate judicial commitment proceedings within the South Carolina Probate Court for Bamberg County.

30.    Thereafter, the South Carolina Probate Court for Bamberg County, South Carolina ordered that Mr. Thibodeau be committed to the G. Werber Bryan Psychiatric Hospital as a result of Mr. Thibodeau lacking "sufficient insight or capacity to make responsible decisions with respect to treatment."  Mr. Thibodeau was never transferred to the G. Werber Bryan Psychiatric Hospital pursuant to the Order of the Circuit Court.

31.    At all times following his arrest on February 14, 2022, up to his transfer to the local emergency department on the morning of July 10, 2022, Mr. Thibodeau was housed within the Bamberg County Detention Center in the care, custody, and control of the Defendants.  While housed at the Bamberg County Detention Center, the Defendants were responsible for providing Mr. Thibodeau with access to reasonable and appropriate medical care and attention.  If the

Defendants were unable to provide the medical care and attention that Mr. Thibodeau needed, the Defendants were contractually and constitutionally obligated to ensure he was transferred to a medical facility suitable to meet his medical and mental healthcare needs.

32.     Despite multiple Court Orders referencing Mr. Thibodeau's untreated, severe medical and mental health conditions, Mr. Thibodeau was administered zero mental health medications for his open and obvious mental health condition.

33.     Further, despite Mr. Thibodeau's diabetes diagnosis and history of having to control his diabetes with both insulin and metformin, Mr. Thibodeau was administered no medications during his time within the Bamberg County Detention Center despite his open and obvious need for such medications.

34.     At all times during his detainment, Mr. Thibodeau remained in a manic and psychotic state despite a decades-long history of successful management of his mental health condition through the proper administration of mood stabilizers and antipsychotic medications.

35.     Between February 14, 2022 and July 10, 2022, Mr. Thibodeau's physical health deteriorated catastrophically.  Mr. Thibodeau's open and obvious physical decompensation at Bamberg County Detention Center is well documented on video filmed within the detention center.

36.     During this time period, Mr. Thibodeau remained in an isolated cell where records indicate he spent the bulk of his time naked and covered in excrement.

37.     Additionally, during the time period in question, Mr. Thibodeau was subjected to force, including but not limited to the use of taser guns and chemical munitions.  The Plaintiff is informed and believes that Mr. Thibodeau was subjected to repeated force by way of taser guns and chemical munitions due to Mr. Thibodeau displaying symptoms of his untreated mental health conditions and law enforcement's lack of understanding of his mental instability.  The Plaintiff is informed

and believes that the repeated exposure to use of force caused Mr. Thibodeau's physical and mental health to further deteriorate.

38.     Mr. Thibodeau was known to regularly refuse meals and therefore suffered drastic weight loss and life-threatening malnutrition.  Upon information and belief, Mr. Thibodeau refused meals out of delusions that he was being poisoned by the staff employed at the Detention Center due to his untreated mental health condition.  Despite his obvious weight loss and well-known food refusals, Defendant Southern Health Partners, Inc. failed to document any assessments of Mr. Thibodeau, failed to document his food refusals, and failed to refer Mr. Thibodeau for a mental health assessment.

39.     On July 10, 2022, as a result of the continued, open, and obvious physical deconditioning and decompensation, Mr. Thibodeau was found breathing but unresponsive in his cell.  Mr. Thibodeau was transported to the Bamberg-Barnwell Emergency Medical Center where he was found to be in critical condition and suffering from hypothermia, lactic acidosis, and hypoglycemia.  At the time of his transport to the Bamberg-Barwell Emergency Medical Center, his weight was reported to be 101 pounds, having previously weighed 178 pounds in November of 2021.

40.      As a result of his critical condition, Mr. Thibodeau was immediately transferred to the Lexington Medical Center in West Columbia, South Carolina for a higher level of care as the Bamberg-Barnwell Medical Center was unable to care for a patient in Mr. Thibodeau's condition.

41.     Upon admission to the Lexington Medical Center, it was determined that Mr. Thibodeau was unresponsive and had been so for "'several hours'" per jail staff member accompanying Mr. Thibodeau.  Mr. Thibodeau was also noted to be in handcuffs despite being unconscious and near death.

42.     Medical Staff at the Lexington Medical Center further discovered that Mr. Thibodeau was experiencing active heart failure, circulatory failure, liver failure, kidney failure, and respiratory failure.  Additionally, upon evaluation of Mr. Thibodeau, Lexington Medical Center staff found maggots on his skin, along with several open wounds, bruises, and skin breakdown. Mr. Thibodeau was further found to be suffering from severe dehydration and septic shock.

43.     Despite intensive medical intervention within the Lexington Medical Center, Mr. Thibodeau succumbed to severe physical decompensation and starvation on July 23, 2022.

44.     On autopsy, the performing pathologist noted that Mr. Thibodeau showed open and obvious signs of emaciation including depletion of adipose tissue stores, serious atrophy of adipose tissue, bitemporal wasting, sunken orbits [of the eyes], and hollow cheeks.

45.     Mr. Thibodeau was also found to have a Stage 2 sacral decubitus ulcer as a result of prolonged periods of lying on the concrete floor of his cell as his health deteriorated.

46.     Mr. Thibodeau's cause of death was determined to be multisystem organ failure.  The multisystem organ failure was caused by prolonged and continued inattention to his deteriorating physical and medical condition.

47.     Upon information and belief, had Mr. Thibodeau been provided with adequate hydration, nourishment, and medical intervention, his severe, open, and obvious physical decompensation and ultimate death would have been prevented.

48.     The Defendants had knowledge of the life-threatening nature of Mr. Thibodeau's condition but acted in blatant disregard for his safety and well-being.  Further, the Defendants had actual and/or constructive knowledge of Mr. Thibodeau's severe medical and physical condition, rapidly declining health, and his need for appropriate hydration, nourishment, medical treatment, and basic care.  As a direct and proximate result of the Defendants' acts and omissions, the Plaintiff's

decedent, Alan R. Thibodeau, has incurred damages including conscious pain, suffering, and death.

49.     In addition, the statutory heir of Alan R. Thibodeau, his adult son, has suffered statutory damages including unnecessary and preventable grief and sorrow as further outlined below.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**AGAINST DEFENDANT BAMBERG COUNTY**
**(Gross Negligence/Survival)**

50.     The foregoing factual allegations are made a part of this First Cause of Action through incorporation by reference.

51.     The above incident and Mr. Thibodeau's resulting injuries and death were proximately caused by the negligent, grossly negligent, and reckless acts/occurrences of the Defendant, in the following particulars:

    a.  In failing to protect Mr. Thibodeau from harm;

    b.  In failing to exercise reasonable or slight care to provide Mr. Thibodeau with appropriate attention and/or properly summon medical treatment for open and obvious physical and mental deterioration;

    c.  In failing to exercise reasonable or slight care to properly train and/or supervise its personnel, agents and/or employees so as to ensure that detainees, including Mr. Thibodeau, are provided with proper supervision, attention, and care while detained;

    d.  In failing to exercise reasonable or slight care to take the appropriate steps to secure or summon appropriate medical treatment and/or emergency treatment for Mr. Thibodeau when they had actual and constructive notice of his deteriorating physical condition;

e. In failing to exercise reasonable or slight care to follow and adhere to the policies and procedures of the Bamberg County Detention Center;

f. In failing to exercise reasonable or slight care to follow and adhere to the mandates of the Minimum Standards of Local Detention Facilities in South Carolina;

g. In failing to make reasonable efforts to secure medical care for Mr. Thibodeau despite his open and obvious serious and emergent medical needs;

h. In failing to exercise reasonable or slight care to properly screen, classify or treat Mr. Thibodeau during his detainment;

i. In abandoning Mr. Thibodeau when he was in desperate need of medical care;

j. In failing to exercise reasonable or slight care to provide access to Mr. Thibodeau's necessary prescription medications, including Trazadone, Depakote, Thorazine, Lipitor, Atarax, and Humalog;

k. In failing to recognize Mr. Thibodeau's psychiatric decision-making incompetence related to food refusal;

l. In failing to exercise reasonable or slight care to stabilize Mr. Thibodeau's psychiatric condition when he was noted to be actively psychotic for several months;

m. In failing to exercise reasonable or slight care to stabilize Mr. Thibodeau's acute psychiatric and medical condition and/or transfer him to a facility capable of treating him;

n. In failing to exercise reasonable or slight care to intervene when it was known that Mr. Thibodeau was refusing to eat and it was openly obvious that he was experiencing extreme weight loss;

12

o. In failing to exercise reasonable or slight care to timely transfer Mr. Thibodeau to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

p. In failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's extreme malnutrition with bitemporal wasting;

q. In failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's dehydration;

r. In failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's decubitus ulcer;

s. In failing to exercise reasonable or slight care to secure treatment for Mr. Thibodeau's thrombocytopenia, hypothermia, and hypoglycemia;

t. In failing to exercise reasonable or slight care to secure treatment for Mr. Thibodeau's multiorgan failure;

u. In failing to exercise reasonable or slight care to prevent Mr. Thibodeau's obvious emaciation;

v. In failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for Mr. Thibodeau's declining health;

w. In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees; and

x. In outsourcing medical care to Defendant Southern Health Partners, despite actual knowledge that the medical care provided was substandard and outside of the

acceptable standard of care and was resulting in injuries and death to the inmate population.

52.     As a direct and proximate result of the Defendant's negligent, grossly negligent, and reckless conduct, Mr. Thibodeau was severely injured, suffered needlessly, and subsequently died.

53.     Based on the foregoing allegations, the Plaintiff is entitled to an award of ACTUAL and CONSEQUENTIAL DAMAGES, per occurrence, as defined by the South Carolina Tort Claims Act, for Defendant's multiple and independent acts of gross negligence.

**FOR A SECOND CAUSE OF ACTION**
**AGAINST DEFENDANT BAMBERG COUNTY**
**(Gross Negligence /Wrongful Death)**

54.     The foregoing factual allegations are made a part of this Second Cause of Action through incorporation by reference.

55.     This action for wrongful death of Mr. Thibodeau is brought pursuant to the provisions of §15-51-10 et seq., of the Code of Laws of South Carolina (1976, as amended), and is brought on behalf of the sole statutory heir of Mr. Thibodeau, who died on July 23, 2022.

56.     The above incident and Mr. Thibodeau's resulting injuries and death were proximately caused by the negligent, grossly negligent, and reckless acts of the Defendant as set forth above.

57.     As a direct and proximate result of the negligent, grossly negligent, and reckless acts and omissions of the Defendant, Mr. Thibodeau suffered a premature death and Mr. Thibodeau's statutory heir has been damaged and suffered as follows:

     a.   loss of contribution of the deceased;

     b.   extreme mental shock and suffering;

     c.   extreme wounded feelings;

     d.   tremendous grief and sorrow;

    e.   loss of friendship and companionship;

    f.   loss of a father and relative.

58.    Based on the foregoing allegations, the Plaintiff is entitled to an award of ACTUAL and CONSEQUENTIAL DAMAGES, per occurrence, as defined by the South Carolina Tort Claims Act, for Defendant's multiple and independent acts of gross negligence.

**FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANT SOUTHERN HEALTH PARTNERS, INC.**
**(Negligence / Gross Negligence / Medical Malpractice / Survival)**

59.    The foregoing factual allegations are made a part of this Third Cause of Action through incorporation by reference.

60.    At all times mentioned herein, Mr. Thibodeau was under the care of the medical staff of Southern Health Partners, Inc., who contracted to provide in-house medical care within the Bamberg County Detention Center and had a physician-patient relationship with Mr. Thibodeau.

61.    The above incidents and Mr. Thibodeau's resulting injuries and death were proximately caused by the negligent, grossly negligent, reckless, willful and wanton acts of the Defendant, in the following particulars:

    a.   Failing to conduct a health assessment of Mr. Thibodeau;

    b.   In failing to provide access to proper medical treatment while detained;

    c.   Failing to conduct a 14-day medical assessment;

    d.   Failing to exercise reasonable or slight care to administer Mr. Thibodeau's necessary prescription medications, including Trazadone, Depakote, Thorazine, Lipitor, Atarax and Humalog;

    e.   Failing to recognize Mr. Thibodeau's psychiatric decision-making incompetence related to food refusal;

f.  Failing to exercise reasonable or slight care to stabilize Mr. Thibodeau's psychiatric condition when he was noted to be actively psychotic for several months;

g.  Failing to exercise reasonable or slight care to stabilize Mr. Thibodeau's acute psychiatric and medical condition and/or transfer him to a facility capable of treating him;

h.  Failing to exercise reasonable or slight care to intervene when it was known that Mr. Thibodeau was refusing to eat and was obvious that he was experiencing extreme weight loss;

i.  Failing to exercise reasonable or slight care to timely transfer Mr. Thibodeau to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

j.  Failing to exercise reasonable or slight care to provide treatment, including medications, for Mr. Thibodeau's documented diabetes;

k.  Failing to evaluate Mr. Thibodeau after he was subjected to the utilization of force, including the use of a taser;

l.  Failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's extreme malnutrition with bitemporal wasting;

m.  Failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's dehydration;

n.  Failing to exercise reasonable or slight care to prevent and/or treat Mr. Thibodeau's decubitus ulcer;

o.  Failing to exercise reasonable or slight care to treat Mr. Thibodeau's thrombocytopenia, hypothermia, and hypoglycemia;

p.   Failing to exercise reasonable or slight care to treat Mr. Thibodeau's multiorgan failure;

q.   Failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for Mr. Thibodeau's declining health;

r.   Failing to exercise reasonable or slight care to follow and adhere to the policies and procedures of Southern Health Partners, Inc.;

s.   Failing to exercise reasonable or slight care to follow and adhere to the standards of the National Commission on Correctional Health Care.

t.   Failing to exercise reasonable or slight care to protect Mr. Thibodeau from harm;

u.   In abandoning Mr. Thibodeau when he was in desperate need of medical care; and

v.   In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

62.   As a direct and proximate result of the Defendant's negligent, grossly negligent, and reckless conduct, Mr. Thibodeau was severely injured, suffered needlessly, and subsequently died.

63.   Based on the foregoing allegations, the Plaintiff is entitled to an award of ACTUAL and CONSEQUENTIAL DAMAGES.

64.   Defendant's conduct as outline above was reckless, wanton, and willful, as such Plaintiff is further entitled to an award of PUNITIVE DAMAGES.

### FOR A FOURTH CAUSE OF ACTION
### AGAINST DEFENDANT SOUTHERN HEALTH PARTNERS, INC.
**(Negligence / Gross Negligence / Medical Malpractice / Wrongful Death)**

65.   The foregoing factual allegations are made a part of this Fourth Cause of Action through incorporation by reference.

66.    This action for wrongful death of Mr. Thibodeau is brought pursuant to the provisions of §15-51-10 et seq., of the Code of Laws of South Carolina (1976, as amended), and is brought on behalf of the sole statutory heir of Mr. Thibodeau, who died on July 23, 2022.

67.    The above incident and Mr. Thibodeau's resulting injuries and death were proximately caused by the negligent, grossly negligent, and reckless acts of the Defendant as set forth above.

68.    As a direct and proximate result of the negligent, grossly negligent, and reckless acts and omissions of the Defendant, Mr. Thibodeau suffered a premature death and Mr. Thibodeau's statutory heir has been damaged and suffered as follows:

   a.   loss of contribution of the deceased;

   b.   extreme mental shock and suffering;

   c.   extreme wounded feelings;

   d.   tremendous grief and sorrow;

   e.   loss of friendship and companionship; and

   f.   loss of a father and relative.

69.    Based on the foregoing allegations, the Plaintiff is entitled to an award of ACTUAL and CONSEQUENTIAL DAMAGES.

70.    Defendant's conduct as outlined above was reckless, wanton, and willful, as such Plaintiff is further entitled to an award of PUNITIVE DAMAGES.

### FOR A FIFTH CAUSE OF ACTION
**AGAINST DEFENDANTS BILLY RAY COGGINS, LT. ASHLEY WOODS, CPL. PATRICE HATTON, and CPT. LATARCHA WILSON *each in their individual capacity* (Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process / Failure to Provide Medical Care for a Serious Medical Need / Cruel and Unusual Punishment)**

71.    The foregoing factual allegations are made a part of this Fifth Cause of Action through incorporation by reference.

72.     During the time period in question, Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson were acting under the color or pretense of state law, customs, practices, usage or policy as employees of Bamberg County working within the Bamberg County Detention Center and had certain duties imposed upon them with regard to Mr. Thibodeau. Additionally, during the time period in question, Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson were well-aware that Mr. Thibodeau suffered from serious medical conditions and rapidly declining health, requiring close and frequent monitoring and supervision. Additionally, Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson were aware of Mr. Thibodeau's constitutional rights, including his right to due process and access to proper and adequate medical care for his open and obvious, serious medical needs.

73.     At all relevant times, Mr. Thibodeau had clearly established rights under the United States Constitution which included: (a) to be free from any punishment; (b) to be free from government conduct that shocks the conscience; (c) to be free from cruel and unusual punishment; (d) to be free from deliberate indifference to a substantial risk of serious harm; (e) to be free from state created danger; (f) to bodily integrity; and (g) to receive adequate medical care and to be free from deliberate indifference to medical needs.

74.     Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered through discovery and at trial.

75.     Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson were consciously indifferent and deliberately indifferent to Mr. Thibodeau in the following particulars:

a.  In knowingly, deliberately, and consciously failing to secure the necessary and/or appropriate medical attention, treatment or medications to Mr. Thibodeau when doing so could have been easily accomplished;

b.  In knowingly, deliberately and consciously failing to use even slight care and caution in safekeeping Mr. Thibodeau;

c.  In knowingly, deliberately, and consciously failing to secure reasonable, necessary and appropriate medical care to Mr. Thibodeau - who had serious medical conditions which were open and obvious;

d.  In knowingly, deliberately and consciously failing to sufficiently monitor Mr. Thibodeau while he was detained despite knowledge of the severity of his condition;

e.  In knowingly, deliberately and consciously failing to obtain adequate hydration and nutrition for Mr. Thibodeau while he was detained despite knowledge of the severity of his condition;

f.  In knowingly, deliberately and consciously failing to transfer and/or refer Mr. Thibodeau for emergency medical assistance at the appropriate time;

g.  In knowingly, deliberately and consciously failing to protect Mr. Thibodeau from harm;

h.  In failing to exercise reasonable or slight care to intervene when it was known that Mr. Thibodeau was refusing to eat and it was openly obvious that he was experiencing extreme weight loss;

i.  In failing to exercise reasonable or slight care to timely transfer Mr. Thibodeau to an emergency department or outside medical facility for advanced medical care in

light of his obvious and well-known deteriorating physical and mental conditions;

    j.   In failing to exercise reasonable or slight care to prevent Mr. Thibodeau's obvious emaciation; and

    k.   In failing to exercise reasonable or slight care to intervene whatsoever to provide access to treatment for Mr. Thibodeau.

76.    The unconstitutional misconduct described herein was objectively unreasonable and was undertaken deliberately, with malice and knowing disregard for Mr. Thibodeau's clearly established constitutional rights.

77.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, Mr. Thibodeau suffered deprivations of his rights secured by the Fourteenth Amendment to the United States Constitution.

78.    As a result, Mr. Thibodeau suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights.  Mr. Thibodeau's son and heir has suffered the loss of the life of his father, loss of his love and support, mental anguish, emotional distress, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES from Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson.

79.    The Plaintiff is informed and believes that the Estate of Alan R. Thibodeau is entitled to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES against Defendants Billy Ray Coggins, Lt. Ashley Woods, Cpl. Patrice Hatton, and Cpt. Latarcha Wilson pursuant to their violation of Federal Civil Rights 42 U.S.C. 1983.

**FOR A SIXTH CAUSE OF ACTION**
**AGAINST DEFENDANTS KAREN HUGHES, LPN**
**and GERI GILLESPIE, LPN *in their individual capacity***
**(Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process / Failure to**

**Provide Medical Care for a Serious Medical Need / Cruel and Unusual Punishment)**

80.　The foregoing factual allegations are made a part of this Sixth Cause of Action through incorporation by reference.

81.　During the time period in question, Defendants Karen Hughes, LPN and Geri Gillespie, LPN were acting under the color or pretense of state law, customs, practices, usage or policy as nurses employed through Southern Health Partners to provide medical care within the Bamberg County Detention Center and had certain duties imposed upon her with regard to Mr. Thibodeau. Additionally, during the time period in question, Defendants Karen Hughes, LPN and Geri Gillespie, LPN, were well-aware that Mr. Thibodeau suffered from serious medical conditions and rapidly declining health, requiring close and frequent monitoring and supervision.  Additionally, Defendants Karen Hughes, LPN and Geri Gillespie, LPN were aware of Mr. Thibodeau's constitutional rights, including his right to due process and access to proper and adequate medical care.

82.　At all relevant times, Mr. Thibodeau had clearly established rights under the United States Constitution which included: (a) to be free from any punishment; (b) to be free from government conduct that shocks the conscience; (c) to be free from cruel and unusual punishment; (d) to be free from deliberate indifference to a substantial risk of serious harm; (e) to be free from state created danger; (f) to bodily integrity; and (g) to receive adequate medical care and to be free from deliberate indifference to medical needs.

83.　Defendants Karen Hughes, LPN and Geri Gillespie, LPN violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered through discovery and at trial.

84.     Defendants Karen Hughes, LPN and Geri Gillespie, LPN were consciously indifferent and deliberately indifferent to Mr. Thibodeau in the following particulars:

   a.  In knowingly, deliberately, and consciously failing to secure the necessary and/or appropriate medical attention, treatment or medications to Mr. Thibodeau when doing so could have been easily accomplished;

   b.  In knowingly, deliberately and consciously failing to use even slight care and caution in safekeeping Mr. Thibodeau;

   c.  In knowingly, deliberately, and consciously failing to secure reasonable, necessary and appropriate medical care to Mr. Thibodeau - who had serious medical conditions which were open and obvious;

   d.  In knowingly, deliberately and consciously failing to sufficiently monitor Mr. Thibodeau while he was detained despite knowledge of the severity of his condition;

   e.  In knowingly, deliberately and consciously failing to obtain adequate hydration and nutrition for Mr. Thibodeau while he was detained despite knowledge of the severity of his condition;

   f.  In knowingly, deliberately and consciously failing to transfer and/or refer Mr. Thibodeau for emergency medical assistance at the appropriate time; and

   g.  In knowingly, deliberately and consciously failing to protect Mr. Thibodeau from harm.

85.     The unconstitutional misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Mr. Thibodeau's clearly established constitutional rights.

86.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, Mr. Thibodeau suffered deprivations of his rights secured by the Fourteenth Amendment to the <u>United States Constitution</u>.

87.    As a result, Mr. Thibodeau suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights.  Mr. Thibodeau's son and heir has suffered the loss of the life of his father, loss of his love and support, mental anguish, emotional distress, attorney fees, and undue grief, and will likely suffer from the effects of the Defendant's actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES from Defendants Karen Hughes, LPN and Geri Gillespie, LPN.

88.    The Plaintiff is informed and believes that the Estate of Alan R. Thibodeau is entitled to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES against Defendants Karen Hughes, LPN and Geri Gillespie, LPN, pursuant to their violation of Federal Civil Rights 42 U.S.C. 1983.

<u>**DEMAND FOR JURY TRIAL**</u>

**WHEREFORE**, the Plaintiff hereby requests a trial by jury on all of the issues that have been or may hereafter be raised in any of the pleadings.  Plaintiff further seeks judgment against Defendants for:

      a.  actual and consequential damages as to each independent cause of action actual and consequential damages, per occurrence, as defined by the South Carolina Tort Claims Act as to Defendant Bamberg County;

      b.  actual and consequential damages as to Defendants Southern Health Partners, Inc, Geri Gillespie, LPN; Karen Hughes, LPN; Billy Ray Coggins; Lt. Ashley Woods; Cpl. Patrice Hatton; and Cpt. Latarcha Wilson;

c.  punitive damages as to Defendants Southern Health Partners, Inc., Geri Gillespie, LPN; Karen Hughes, LPN; Billy Ray Coggins; Lt. Ashley Woods; Cpl. Patrice Hatton; and Cpt. Latarcha Wilson; in an amount to be assessed by the jury as just and proper and in an amount sufficient to punish Defendants and to deter future misconduct;

d.  Reasonable attorney fees, costs, and expenses as to the claims asserted against Defendants Geri Gillespie, LPN; Karen Hughes, LPN; Billy Ray Coggins; Lt. Ashley Woods; Cpl. Patrice Hatton; and Cpt. Latarcha Wilson; pursuant to 42 U.S.C. § 1988 and other applicable law;

e.  the costs and disbursements of this action;

f.  such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
james@evansmoorelaw.com
Scott C. Evans, SC Bar #77684
scott@evansmoorelaw.com
George W. Bryan III, SC Bar #104088
george@evansmoorelaw.com
Evans Moore, LLC
121 Screven Street
Georgetown, SC 29440
t. 843.995.5000
f. 843.527.4128

Attorneys for the Plaintiff

February 28, 2024
Georgetown, South Carolina

25